Holmes v. Burwell.

APPEAL from the Circuit Court of Ogle County; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. O'BRIEN & O'BRIEN, for appellant.

No appearance for appellee.

---

DENISON F. HOLMES

V.

MARY E. BURWELL, EXECUTRIX.

*Administration—Claims—Limitations—Pleadings—Evidence—Instructions.*

1. Upon a claim filed against the estate of a deceased person to recover a proportionate share of the expenses of certain bankruptcy proceedings, under an agreement entered into with other creditors of a common debtor, this court, reviewing the evidence, holds that the claim is barred by the statute of limitations.

2. The statute of limitations need not be specially pleaded in cases of this character.

3. An agreement to bear a proportionate share of the expenses of certain proceedings will not render the promisor liable for collateral matters.

4. The report of an assignee is not competent evidence of the commencement or termination of a suit. The records and files of the court should be resorted to for such purposes.

[Opinion filed December 8, 1888.]

APPEAL from the Circuit Court of Carroll County; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. M. Y. JOHNSON and HENRY MACKAY, for appellant.

Messrs. GEORGE L. HOFFMAN and J. M. HUNTER, for appellee.

UPTON, J.   On the 5th of April, 1886, plaintiff filed in the County Court of Carroll county a claim against the defendant estate for $470. Objection being filed to the allowance thereof, a hearing was had, which resulted in a judgment against the complainant, and the case was taken by appeal to the Circuit Court of that county, tried by a jury, and a verdict rendered for the defendant estate, upon which a judgment was given, and the case is brought to this court, and the errors assigned are that the trial court erred in its instructions given to the jury as to the statute of limitations, and the exclusion of evidence on the trial of the case.

The cause of action had its inception in the following contract:

"Whereas, Denison F. Holmes has commenced bankruptcy proceedings against John W. Asay, and has employed counsel and paid the register in bankruptcy, J. A. Cragin, $75 advance fees in that proceeding in bankruptcy, and the said Holmes became petitioner and incurred the above obligation and has been to other expenses, with an understanding with us prior thereto that the undersigned would, with said Holmes, bear a *pro rata* share of the expenses of bankruptcy proceedings, the undersigned therefore, hereby, each for himself, agrees that he will pay such a share of the whole expenses of the bankruptcy proceedings as the amount of his claim bears to the sum of the claims of the undersigned against said Asay, and pay the same to said Holmes; and the said Holmes on his

part agrees to pay his share of the same expenses upon the basis above stated.

"Dated April 27, 1874.

"DENISON F. HOLMES,

"Attest:

"V. ARMOUR, as to Adam Burwell.

"ADAM ⋈ BURWELL,
1 is
mark.

"STRONG & WILDEY,

"JESSE P. SHELDON,

"J. M. WILLIS,

"THOS. DEEDS & CO.,

"H. B. PUTERBAUGH,

"C. H. KEIM,

"C. AULTMAN & CO.,

"By W. G. & W. BARNES,

"General Agents."

To the execution of which no question is made. The claim itemized and attested by oath of plaintiff and filed in the county court is as follows:

STATE OF ILLINOIS, } ss. In the Carroll County Court,
  Carroll County. }     In Probate, April term, A. D. 1886.

Denison F. Holmes, being duly sworn, on oath says that the annexed account against the estate of Adam Burwell, deceased, amounting to the sum of four hundred and seventy dollars and —— cents, is just, after allowing all just credits, and is now due and unpaid.

D. F. HOLMES.

Subscribed and sworn to before me this 29th day of March, 1886.

E. T. E. BECKER, Clerk.

STATE OF ILLINOIS, } ss. In the County Court,
  Carroll County. }     To the April term, 1886.

Estate of Adam Burwell, deceased.

To Denison F. Holmes, Dr.:

As per contract, which is hereto annexed, the *pro rata* share of costs and expenses for said estate to pay is as follows:

Percentage.................................$700 00
Credit by amount paid and expenses incurred by
    said Burwell in his lifetime................. 230 00

Balance.............................$470 00

In the matter of the bankruptcy case of John W. Asay.
Bill of particulars of costs and expenses paid by Denison F.
Holmes in said matter, and list of unpaid claims:

1874, April. Cash paid J. A. Crain, advance fee
    as commissioner in bankruptcy............$ 75 00
1874, Oct. Cash paid W. Weigley & Son, att'y
    fees.......................... ............ 55 00
1874, Dec. Cash paid J. A. Crain, com'r's fees, etc. 150 00
    "   "   Telegraphic dispatches............ 2 57
    "   "   Cash paid J. A. Crain............. 15 00
    "  "  "  "  "  " chancery case,
going to Chicago........................... 15 00
1876, Dec. Cash paid J. A. Crain, com'r's fees,
    taking testimony.......................... 75 00
1876. Cash paid U. S. Marshal fees............ 96 00
    " Cash paid Barge & Dixon at Freeport.... 15 00
    " Cash paid V. Armour.................. 5 00
    " Cash paid W. D. Hughes.............. 18 00
1878. Tenney, Flower & Abercrombie.......... 100 00
    " Expense paid witness Brown to Freeport
and return............................... 2 10
1878. Expense paid witness Roscoe Johnson.... 5 00
    " Expense paid (my own) to Freeport and
return................................. 3 00
    "   " of 14 trips to Chicago and return.. 200 00
    "   " trip to Dixon to see Barge........ 2 50
    "   " of 3 trips to Freeport with Armour,
$2.50, $10.50 and $5.60.................... 18 00
1878. Expenses of 2 trips to Iowa with Frank
    Holmes, to get affidavits for a new trial in
    chancery case of Shaw vs. Asay et al........ 40 00
1884. Cash paid G. L. Hoffman, fees, second trial
    Tenney & Co. cases...................... 50 00

| | | |
|---|---|---|
| 1885.  Cash  paid  M. Y.  Johnson,  att'y fees,  trial Tenney  &  Co.  cases. ...................... | 50 | 00 |
| 1885.  Cash paid G. L. Hoffman, att'y fees, Spealman case.................................... | 10 | 00 |
| 1885.  Expenses  due,  and  unpaid  bal.  att'y  fee due V. Armour............................. | 85 | 00 |
| There is something, about $5 to $10, due W. P. Robbe  for  serving  subpœnas,  but  the  exact amount I do not know. | | |
| 1885.  Expense paid by A. Burwell, trip to Dixon, | 5 | 00 |
|  "   Trip to Chicago, Ill...................... | 15 | 00 |

The total amount of claims proven against the bankrupt estate of John W. Asay was $4,749.88.

The amount due from the bankrupt estate to Adam Burwell (deceased) was $2,774.07.

The amount claimed for costs and expenses in the bankrupt proceeding, deducting the items withdrawn on the hearing in the court below, amounts to $825, or about that sum, as claimed by plaintiff on hearing, instead of $980, as claimed on the account filed, and upon this basis the *pro rata* of contribution under the contract was made as stated on the account, which, as will be seen, was incorrect.

It was conceded by plaintiff on the trial in the court below, after withdrawing claim as hereafter stated, that the estate of Adam Burwell on this *pro rata* would be but $554, instead of $700 as claimed in the account, and would, on that basis, bear a balance due the plaintiff, about $234, instead of $470 as claimed in the account filed.

To this claim the statute of limitations was interposed. It is not necessary in cases of this character that the statute should be especially pleaded. Thompson v. Reed, Adm'x, 48 Ill. 122; Thorp v. Goewey, 85 Ill. 611. We think the liability of the parties to the contract in question extended only to the expenses incurred in "the bankrupt proceedings" and to that alone. The liability thereby created would not embrace the costs and expenses of other suits and proceedings instituted by the assignee or creditors of the bankrupt estate in supposed aid of such bankrupt proceeding.

It is apparent, we think, that the item of $50 paid Hoffman, fees on trial of Tenney & Co., was not paid for services in the bankrupt proceedings.

The same may be said of the next item of $50 for attorney's fee in the same case of Tenney & Co., and of the next charge of $50 to Hoffman for fees in Spealman case. The item of $85 to V. Armour, if chargeable to the defendant estate, accrued and was settled by appellant in 1877, or, as Mr. Armour states on cross-examination, "more than ten years ago." As to the items "which might be due Robbe" there is no evidence. The plaintiff does not know if any such there are, or if existing, in what proceeding the service was rendered. In the same condition are the last two items of trips to Dixon and Chicago.

The record discloses three suits in which, or some one of them, the moneys claimed to have been paid for services rendered are sought to be recovered in this proceeding.

The first was the bankrupt proceeding against John W. Asay, to which the contract related. The second was a suit in equity commenced by Shaw, assignee, in bankruptcy, and a third a suit of Tenney & Co. against the plaintiff. In which one of these proceedings the moneys were paid and services rendered as charged in the claim here sought to be recovered does not appear.

In the court below the plaintiff, by leave of court, withdrew the receipt for money and the items of money paid under the receipts of Weigley and Tenney, Flower & Abercrombie, reducing the claim for expenses in bankrupt proceedings $155.

It does, however, appear that deceased, Adam Burwell, in his lifetime paid to the plaintiff the sum of $230, and was abundantly able, financially, to respond to all claims against him. It is apparent that this payment is sufficient to cancel all the items in the claim of the plaintiff which are shown by the evidence to have accrued within ten years next prior to the filing of the plaintiff's claim in the County Court.

But it is said the contract was a continuing one, and the statute would not commence to run until the final termination of the bankrupt proceedings. If that be conceded, will it

avail the plaintiff? Is there any evidence in this record to show that those proceedings terminated less than ten years before the filing of the plaintiff's claim? If so, we have been unable to find it.

It is true the plaintiff, on the trial below, offered the report of Mr. Shaw, assignee in bankruptcy of Asay's estate (as his counsel stated), to show when the bankrupt proceedings terminated, and upon objection thereto, the court excluded the offered evidence. Of that ruling appellant complains and it constitutes one of the errors assigned. We think the evidence was properly excluded. The report of the assignee could in no legal sense be regarded as evidence of judicial proceedings, or as to commencement or termination of suits pending. The record and files of the court, or copies thereof, would be better evidence for that purpose. The report was not evidence of the payment of money or services rendered by the assignee. The court below ruled correctly upon that point, as we think. On the face of the claim, as filed, *prima facie*, the statutory bar attached, and the plaintiffs have in no manner, by the evidence in the case, overcome it.

We have carefully examined this record as to the facts therein contained, and the instructions of the court, and we are satisfied that the jury were fully warranted, from the evidence, in finding the verdict they did, and that in the instructions given, taken as a whole, the court did not err; and finding no substantial error in the record, the judgment of the court must be affirmed.

*Judgment affirmed.*